219 So.2d 508

VERNECO, INC., et al.

v.

FIDELITY & CASUALTY COMPANY
OF NEW YORK.

No. 49189.

Feb. 24, 1969.

Gold, Hall & Skye, Alexandria, for plaintiffs-applicants.

Stafford & Pitts, Alexandria, for defendant-respondent.

SUMMERS, Justice.

Plaintiffs Verneco, Inc., and Roy O. Martin Retirement Trust instituted this suit against Fidelity and Casualty Company of New York to recover under a blanket crime policy insuring plaintiffs and the affiliated companies of Martin Industries against fraudulent or dishonest acts of its employees. The trial court gave judgment in favor of plaintiffs as prayed for in the sum of $10,000, the full amount of the policy coverage. On appeal to the Third Circuit, the judgment was reversed. 207 So.

2d 828. We granted writs to review the judgment of the Court of Appeal.

Milton Lee Walden, the employee whose defalcations brought about the loss for which plaintiffs seek recovery, was convicted of theft on November 2, 1960 and placed on probation. Thereafter on June 9, 1961, after probation violation, he was incarcerated in the penitentiary to serve a sentence of five years.

While Walden was confined in the penitentiary, Norman Martin, an official of the plaintiff companies, upon recommendation of the penitentiary chaplain, obtained Walden's parole and gave him employment with the plaintiff companies. This occurred in November 1961. The blanket crime policy in question was installed with defendant effective July 14, 1962. On October 22, 1963 Walden secured a pardon from the Governor of Louisiana.

The testimony of Mark Howard discloses that he was employed by Martin Industries during 1962 and was in charge of all insurance. His duties were to determine what insurance was necessary, contact the appropriate agent and negotiate the insurance. In this capacity he handled the installation of the policy in question. He testified that the only information requested by the defendant was the number of employees to be covered, in order that they might determine the premium charge.

In December 1964 it was discovered that Walden had been misappropriating funds of Roy O. Martin Retirement Trust and forging, altering and duplicating checks of Verneco, Inc. The amount misappropriated exceeded the $10,000 policy coverage. Plaintiffs' demand for payment under the policy was refused, defendant asserting that plaintiffs' knowledge of the employee Walden's prior dishonesty, conviction and incarceration in the penitentiary for theft precluded coverage for Walden's dishonest acts while in plaintiffs' employ under a specific exclusion contained in the policy reading as follows:

"Section 7. Prior Fraud, Dishonesty or Cancellation.

The coverage of this policy shall not apply to any employee from and after the time that the insured or any partner or officer thereof not in collusion with such employee shall have knowledge or information that such employee has committed any fraudulent or dishonest act in the service of the insured or otherwise, whether such act be committed before or after the date of employment by the insured."

Plaintiffs, on the other hand, base its claim for recovery on three contentions.

First, that the quoted exclusions clause is vague and ambiguous and should be construed against defendant insurer who wrote the policy. Principally the argument on this point is that the exclusion clause has reference to knowledge obtained in the future when it provides: "The coverage * * * shall not apply * * * from and after the time that insured * * * shall have knowledge * * * that such employee has committed any fraudulent or dishonest act * * *" Thus, knowledge of dishonest acts obtained in the past, prior to the inception date of the policy, could not be a basis for excluding coverage on account of dishonest acts performed after the effective date of the policy.

This first contention is without merit. As we read the exclusion clause, the coverage under the policy does not apply "from and after" the moment the insured "shall have knowledge" of a dishonest act committed by the employee. In the context of this factual situation this means that no coverage ever obtained insofar as Walden was concerned because the insured obtained knowledge of Walden's dishonest acts at least in November 1961 prior to the inception date of the policy in July 1962. The futurity implied in "shall have knowledge" is coverage after that fact—meaning there can be no coverage after the insured "shall have *obtained* knowledge" whether the knowledge was obtained before or after the effective date of the policy.

We think it is implicit in these situations that the parties approach the installation of the policy assuming that all employees

are honest until they are known to be otherwise. Thus, if the insured then has knowledge of a dishonest person in his employ, he is aware, by the terms of the exclusion clause, that he is not insured for the dishonest acts of that employee. A contrary view of the exclusion clause such as the plaintiff urges us to adopt would permit the insured to obtain insurance against the dishonest acts of employees he knows were dishonest before employment, although the exclusion clause plainly indicates there can be no coverage after the insured "shall have knowledge" of dishonesty of his employees. Our interpretation is supported by the very language of the exclusion clause for it explicitly applies to dishonest acts "committed before or after the date of employment by the insured."

Secondly, plaintiffs argue that the law imposes a duty upon an insurance company writing these policies to investigate employees who are to be covered in order that the insured will be apprised of the exclusion from coverage of employees thereby disclosed to have known dishonest histories.

■■■ This second contention is also without merit. There is no law which would prevent the parties by their contract from placing the onus upon the insured to act where he has knowledge of a dishonest employee, either by discharging the employee or by obtaining special coverage. If

he fails to take these steps and a loss results from the employee's dishonest act, the insured and not the insurer must bear the burden. Moreover, plaintiffs' contention that the insurer must investigate the honesty of the employees whose conduct is insured is unrealistic. In this case, for instance, the policy insures Martin Industries consisting of sixteen different and sizeable corporations located in various sections of Louisiana with constantly changing personnel.

And, finally, plaintiffs say that a pardon by the Governor of a State restores a person's civil rights, releases his punishment and blocks out the existence of his guilt and, therefore, Walden's prior dishonest acts cannot thereafter be the basis for denying coverage under the exclusion clause of the policy.

■■■ This contention is without merit. Although we recognize the effect of a pardon insofar as the offender's relations with the State are concerned, the pardon has no effect upon the contract of these parties. A pardon is simply an act of grace from the governing power which mitigates the punishment the law demands for the offense and restores the rights and privileges forfeited on account of the offense. A pardon does not reduce the moral risk of insuring a thief and can have no effect upon exclusion of coverage on account of

dishonest acts. For example, it is generally held that a pardon does not operate as a bar to disbarment of an attorney for criminal conduct for which he was convicted. People ex rel. Bar Ass'n v. Burton, 39 Colo. 164, 88 P. 1063 (1907); People ex rel. Deneen v. Gilmore, 214 Ill. 569, 73 N.E. 737, 69 L.R.A. 701 (1905). Nor does a pardon of a convict destroy a wife's right to divorce on account of his conviction. Holloway v. Holloway, 126 Ga. 459, 55 S.E. 191, 7 L.R.A.,N.S., 272 (1906).

For the reasons assigned, the judgment of the Court of Appeal is affirmed.