340 So.2d 134 (1976)
LOUISIANA STATE BAR ASSOCIATION
v.
Leslie B. PONDER, Jr.
No. 54456.
Supreme Court of Louisiana.
May 17, 1976.
Concurring Opinion November 8, 1976.
Rehearing Denied December 10, 1976.
*135 John R. Martzell, Milton P. Masinter, New Orleans, for defendant-respondent.
A. Russell Roberts, Chairman, Metairie, Sam J. D'Amico, Baton Rouge, Wood Brown, III, New Orleans, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, Henry A. Politz, Shreveport, John F. Pugh, Thibodaux, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for petitioner (plaintiff).
SUMMERS, Justice.
This proceeding instituted by the Committee on Professional Responsibility of the Louisiana State Bar Association, under this Court's original jurisdiction. La.Const. Art. VIII, § 10 (1921), is based upon a petition for disciplinary action against Leslie B. Ponder, Jr., a member of the bar of this State practicing in Amite, Louisiana. The petition relies upon the authority of Section 8, paragraph (7)(a) through (d) of Article *136 XV of the Articles of Incorporation of the Louisiana State Bar Association as restated March 9, 1971, effective September 1, 1971.[1] The proceeding is founded upon Ponder's 1960-61 violations of Section 7206(1) of Title 26 of the United States Code. He was convicted on February 5, 1970 in the United States District Court for the Eastern District of Louisiana on two counts of making and subscribing income tax returns which were false as to certain material matters. After the conviction was affirmed on appeal to the Fifth Circuit, United States v. Ponder, 444 F.2d 816, writs were denied by the United States Supreme Court on February 22, 1972, 405 U.S. 918, 92 S.Ct. 944, 30 L.Ed.2d 788. The conviction therefore became final 25 days thereafter in accordance with Rule 58 of the Rules of the United States Supreme Court. Ponder's Federal sentence, both pecuniary and otherwise, has been fully satisfied. He received a full pardon from the Governor of Louisiana on March 6, 1972.
This action was instituted on February 19, 1974 by the Louisiana Bar Association through its Committee on Professional Responsibility. A number of exceptions to the petition were filed on Ponder's behalf. Opposition to these was filed by the Committee, and the exceptions were referred to the merits. Ponder then answered, and the Court appointed the Honorable Richard F. Knight as Commissioner to take the evidence and report his findings of fact and conclusions of law. After hearing the evidence on February 26, 1975, the Commissioner permitted the record to remain open until May 26, 1975 for the filing of additional exhibits. He then submitted his report on November 26, 1975, in which the Committee concurred, concluding that the offense of which respondent was convicted was serious enough to warrant disciplinary action by this Court. The matter was heard in this Court and has been submitted for decision.
Before the present proceeding was instituted, the Bar Association filed a petition for disciplinary action against Ponder on April 12, 1972. This prior proceeding was based upon the same February 5, 1970 conviction of violations of Section 7206(1) of Title 26 of the United States Code which formed the basis for the present proceeding. It was also brought upon the authority of Section 8, paragraph (7)(a) through (d) of Article XV of the 1971 Articles of Incorporation of the Louisiana State Bar Association.
Ponder filed a number of motions and exceptions to the Bar Association's petition and the matter was set for argument in this Court on May 10, 1972. Thereafter this Court rendered its judgment on November 6, 1972 denying the motions and overruling the exceptions. La. State Bar Assn. v. Ponder, 263 La. 743, 269 So.2d 228 (1972). Ponder's application for a rehearing was refused on December 11, 1972, and a Commissioner was appointed to conduct a hearing for disciplinary action against Ponder. The hearing was set for March 20, 1973.
*137 In the meantime, however, on March 10, 1973, Ponder filed a petition for a writ of certiorari in the Supreme Court of the United States to review this Court's judgment of November 6, 1972. In that petition he complained of several violations of federal constitutional rights.
Then, on March 20, 1973, a letter was written by the Committee to Ponder and his counsel to set forth its understanding with reference to the filing of a joint motion with Ponder to dismiss the disciplinary proceeding instituted on April 12, 1972, then pending before this Court.
The letter set forth that the Committee would "reconsider the entire matter under Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, which was the controlling procedure prior to the adoption of Article XV of the Articles of Incorporation, which became effective September 1, 1971." In addition to the procedures outlined in Article XIII, Section 12, of the Articles of Incorporation, which became effective in 1941[2] and which remained in effect until superseded by the 1971 articles, the Committee agreed to afford Ponder an informal hearing before filing any pleadings with this Court.
In consideration of the foregoing, the letter further stipulated that Ponder and his counsel would dismiss or withdraw the petition for writ of certiorari he had lodged in the Supreme Court of the United States on March 10, 1973. In addition, Ponder would forego any action against the Bar Association in any court, specifically the United States District Court for the Eastern District of Louisiana, predicated upon the proceeding then pending against Ponder in this Court.
Ponder agreed to these terms. To implement the agreement, a joint motion was presented to this Court on the same day and the motion to dismiss was granted without prejudice. In addition, on March 26, 1973, Ponder withdrew the petition for certiorari in the United States Supreme Court. Thereafter, on February 19, 1974 the present proceeding was instituted.
It is Ponder's contention that the pending proceeding under Article XV, Section 8, paragraph (7)(a) through (d) of the 1971 Articles of Incorporation, is contrary to the terms of the letter of March 20, 1973, whereby it was agreed and understood that the Committee would, if it reconsidered the matter, do so under Article XIII of the 1941 articles in effect at the time of the 1960-61 violations of Section 7206(1) of Title 26 of the United States Code.
He asserts, moreover, that Section 8 of Article XV of the 1971 articles, as applied against him, is a bill of attainder and an ex post facto law in violation of the Federal and State Constitutions. The basis for this latter argument is the claim that Article XV of the 1971 articles enlarges the penalty for disbarment to a mandatory minimum of five years. He also argues that to apply the 1971 articles to an offense which was committed before their effective date is, in effect, a bill of attainder and ex post facto law.
Although the latter argument is answered by the Commissioner, there appears to be no clear cut decision disposing of the contention that the Committee has failed to adhere to its letter agreement of March 20, 1973. The Committee, however, answers this contention by asserting: first, the proceeding followed by the Committee was totally consistent with Article XV of the 1971 articles and was in no way inconsistent with former Article XIII of the 1941 articles; secondly, the reference to Ponder not filing *138 an action in Federal Court against, inter alia, the Committee, an individual members thereof, has no validity for, they assert, Ponder has in fact filed a complaint seeking an injunction and $750,000 in damages against the Bar Association, the Committee and its members, in pleadings entitled, L. B. Ponder, Jr. v. Louisiana State Bar Association, et al., No. 76-251 on the docket of the United States District Court for the Eastern District of Louisiana.
The first answer of the Committee is not well-founded. It may perhaps be said that the instant proceeding is similar in some respects to proceedings conducted under Article XIII of the 1941 articles, but there are important and significant substantive differences.
Section 12 of Article XIII of the 1941 articles provides that the Court may, upon application, vacate or modify an order of disbarment "whenever any member of the bar shall be convicted of a felony" (without specifying whether it be a state or federal conviction) and, by reason thereof, his name has been stricken from the rolls of attorneys and his license cancelled, and he is "pardoned by the President of the United States or Governor of this State." "While this provision does not require that the disbarment be vacated or modified when a pardon has been granted, there is a strong implication in its content that a pardon warrants setting aside a disbarment. See La.Const. Art. V, § 10 (1921); La. R.S. 15:572.1; Pardons, 1856, 7 Op.Atty.Gen. of U.S. 760. See also, Effect of Pardons, 1857, Op.Atty.Gen. U.S. 284; In re Dileo, 307 So.2d 362 (La.1975).
Thus, arguably, Article XIII of the 1941 articles may have been advantageous to Ponder insofar as it indicates that a pardon warrants setting aside a disbarment. On the other hand, no reference to the effect of a pardon is found in Article XV of the 1971 articles under which the instant proceedings are being conducted. By these proceedings under the 1971 articles Ponder is deprived of the advantage which would result from the recognition that a pardon was a basis for vacating a disbarmentan advantage to which he would be entitled under Article XIII of the 1941 articles. No adjudication of his rights under Article XIII, Section 12 of the 1941 articles has ever been made.
Furthermore, by the provisions of Section 12 of Article XV of the 1971 articles "[a] minimum of five years must elapse following disbarment before the disbarred attorney may apply for reinstatement." Under the provisions of Article XIII of the 1941 articles, which the Committee agreed would govern any proceeding against Ponder, there is no minimum time requirement which must elapse following disbarment before the disbarred attorney may apply for reinstatement. See Section 15, Article XIII, Articles of Incorporation (1941). By conducting these proceedings under the 1971 Articles, instead of the 1941 Articles, therefore, Ponder is denied the right to apply for reinstatement until the lapse of five years after disbarment. The provisions of the 1971 articles are therefore more onerous in this respect.
The Committee's second answer is also without merit. It is true that Ponder has filed suit against the Committee as set forth in its argument. However, what the Committee has failed to note is the fact that Ponder did not file this suit until January 27, 1976, long after the Committee found it unnecessary to comply with its letter agreement of March 20, 1973 by filing the instant proceeding under the 1971 article on February 19, 1974. The matter would be viewed in a different light if Ponder had been the first to repudiate the agreement, but, under the circumstances, what he could not use as a sword, he may use as a shield. In the full context of the proceeding his resort to suit does not deny him the right to invoke the agreement of March 20, 1973.
It may be that the Committee decided after the March 20, 1973 agreement, and the dismissal of the first proceeding, that it was unable to proceed under Article XIII of the 1941 articles because the conviction upon which the action was based did not become final until after Article XIII of the 1941 articles had been superseded by the *139 1971 articles. And, since finality of the conviction was a prerequisite to disciplinary action on that ground, no disciplinary action was available under Article XIII of the 1941 articles. La. State Bar Assn. v. Ponder, 263 La. 743, 269 So.2d 228 (1972). Apparently, feeling that proceedings under Article XV of the 1971 articles were essentially the same and would not unduly prejudice Ponder, as the Committee contends, a decision was made to bring the disciplinary proceedings under the 1971 articles. In this respect the committee erred because there were significant differences between the articles of 1941 and 1971 as pointed out above.
Whatever the Committee's thinking on the subject may have been, even if the effect of the letter agreement of March 20, 1973 was to deprive the Committee of valid authority to bring disciplinary proceedings, we believe it is important to insist upon compliance with the agreement. If the Committee is of the opinion that the letter agreement did not have that effect, the Committee should proceed under Article XIII of the 1941 articles in accordance with the letter agreement of March 20, 1973.
For the reasons assigned, these proceedings are dismissed without prejudice.
DIXON and DENNIS, JJ., dissent.
DIXON, Justice (dissenting).
I respectfully dissent.
The majority has found that the Louisiana State Bar Association, through its Committee on Professional Responsibility, has failed to comply with its agreement with defendant. For that reason, this proceeding against him is dismissed. I cannot agree.
The letter agreement of March 20, 1973[1] simply stated that the first action against Ponder would be withdrawn, and the matter thereafter reconsidered by the Committee under Article XIII of the Articles of Incorporation, which was the controlling procedure prior to the adoption of Article XV in 1971 and at the time of the commission of the offenses by defendant. Article XIII, § 12 (1941) provided:
"Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana. Upon the person so convicted being pardoned by the President of the United States or Governor of this State, the Court, upon application may vacate or modify such order of disbarment."
Article XV, § 8, par. 7(a)-(d) (1971), in effect at the time the instant proceedings were filed, and under which (according to the petition) this proceeding was brought, provides:
"The following rules shall be applicable when a respondent has been convicted of a crime, to-wit:

. . . . .
"(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
"(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.

*140 "(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
"(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
"(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime."
Respondent has been denied none of the procedures provided in Article XIII, § 12 by the Committee's actions in bringing the proceeding under Article XV. Respondent was given an informal hearing. The record was left open for three months after the Commissioner finished hearing evidence. Indeed, under the old article, the Committee could submit a certified copy of the conviction to this court which could, without more, order disbarment.
The majority is unduly concerned with provisions in Article XIII, § 12 (1941) concerning pardon. It is true that Article XIII, § 12 provides that disbarment may be vacated or modified upon a pardon; however, this provision did not require that this court vacate the disbarment upon a pardon. Nor is there anything in Article XV, under which this proceeding was brought, which would prevent us from considering the fact of the pardon if and when respondent made an application for reinstatement. Nothing in the record shows that the Committee failed in any way to comply with its stated intention to "reconsider the entire matter under Article XIII . . . which was the controlling procedure prior to the adoption of Article XV . . ." The fact that the petition stated that it was brought under Article XV of the 1971 Articles, the only articles in effect, demonstrates strict compliance by the Committee with the prior unanimous opinion of this court.
Before the letter agreement of March 20, 1973 was written this court considered and decided unanimously many of the questions urged again by defendant. Louisiana State Bar Association v. Ponder, 263 La. 743, 269 So.2d 228 (1972). Specifically, and most importantly, we decided that the first petition for disbarment, filed April 12, 1972 after the United States Supreme Court denied defendant's application for writs after his conviction for felonious violation of income tax laws, was properly brought under the only disciplinary provision then in force, Article XV, § 8(7) of the Articles of Incorporation of 1971, saying:
"The current Articles of Incorporation of the Louisiana State Bar Association became effective on September 1, 1971. Because respondent's conviction became final after this date, the committee properly instituted this disciplinary action pursuant to Article 15, Section 8(7) of the Articles of Incorporation of 1971. However, under the articles of incorporation as they formerly existed or as they presently exist, respondent has no right to a hearing by the committee prior to the institution of disciplinary proceedings in this court. Respondent's hearing is held before a commissioner appointed by this court after the committee institutes the disciplinary proceeding by petitioning this court for respondent's disbarment. Sections 7, 12, Articles of Incorporation of 1941; Article 15, Section 8(7), Articles of Incorporation of 1971; Louisiana State Bar Association v. Rayl, 208 La. 531, 23 So.2d 206.
"Thus, respondent's exception of prematurity is without merit." 269 So.2d 228, 229-230.
The majority now tells the Committee it should not have proceeded under Article XV of 1971, because of the letter of March 20, 1973.
The letter of March 20, 1973 did not constitute an agreement by the Committee that all subsequent proceedings would be *141 governed by Article XIII of the 1941 articlesno longer in effect. Both parties to that letter were perfectly informed that this court had decided that proceedings under Article XV of the 1971 articles were properly instituted. It is most regrettable that the majority now accuses and wrongfully convicts its own committee of failure to comply with its agreement.
The majority finds that defendant loses two advantages when the proceedings are brought under Article XV of 1971 instead of Article XIII of 1941: (1) Article XV of 1971 does not refer to the effect of a pardon; (2) Article XV of 1971 does not permit application for reinstatement until after five years.
First: we have previously decided in this case that a pardon is not an absolute defense to disbarment:
"Also, a pardon is not an absolute defense to disbarment as respondent contends. People ex rel. Colorado Bar Association v. Burton, 39 Colo. 164, 88 P. 1063. See, State v. Gowland, 189 La. 80, 179 So. 41; People ex rel. Deneen v. Gilmore, 214 Ill. 569, 73 N.E. 737; Verneco, Inc. v. Fidelity & Casualty Company of New York, 253 La. 721, 219 So.2d 508 (dictum)." 269 So.2d 228, 230.
Even under the provisions of Article XIII of 1941, the only effect of a pardon, under long-standing jurisprudence, was not to prevent disbarment, but was to permit the disbarred lawyer to apply to this court for a modification or vacation of the order of disbarment. The existence of a pardon addresses itself to this court, not to the committee, and affects the penalty, not the proceedings. The penalty in a disbarment case is the exclusive province of this court.
Second: before 1971, there was no time limit fixed before a disbarred lawyer could petition for reinstatement; after 1971, a lawyer whose misconduct resulted in disbarment (instead of reprimand or suspension) was required to wait at least five years to apply for reinstatement.
In this case, because of a variety of sanctions available to the court in disciplinary proceedings, the fact that defendant could not apply for reinstatement in less than five years in the event of disbarment is presently irrelevant. Disbarment is not the only possible sanction; every relevant factor will have been considered by this court and we might well decide on suspension instead of disbarment. If we should decide on a penalty of less than disbarment, there is no time limit in the present articles for applying for a modification of the decree. In any event, if we construed the letter of March 20, 1973 in some way to permit defendant to apply for reinstatement before five years elapsed from disbarment, we should not simultaneously hold that Article XI, § 12 of 1971 would prohibit application for reinstatement for five years.
If the true construction of the letter of March 20, 1973 is that defendant may, if disbarred, apply for reinstatement in less than five years, it would be much more sensible for this court to grant that right to the defendant than to dismiss these proceedings.
Defendant's conviction is final. The offense was serious. There is no defense, except in mitigation. If a majority of this court believes defendant has suffered enough for the crimes committed, we should so hold and not, upon such insubstantial grounds, shift the blame to our voluntary committee of honorable and diligent lawyers.

ON REHEARING
DIXON, Justice.
This is a disciplinary action instituted by the Louisiana State Bar Association, through its Committee on Professional Responsibility, against Leslie B. Ponder, Jr., a member of the bar of the State of Louisiana who practices law in Amite, Louisiana. The basis for this action is respondent's conviction on February 5, 1970 by a jury in the United States District Court for the Eastern District of Louisiana of two counts of wilfully making and subscribing income tax returns which were false as to certain material matters. After respondent's conviction was affirmed by the Fifth Circuit, United States v. Ponder, 444 F.2d 816, the United States Supreme Court on February 22, 1972 denied writs, 405 U.S. 918, 92 S.Ct. *142 944, 30 L.Ed.2d 788. Therefore, the conviction became final twenty-five days thereafter pursuant to United States Supreme Court Rule 58. On original hearing this court dismissed the proceedings without prejudice primarily due to our construction of a letter agreement confected between the Committee on Professional Responsibility and respondent. We granted a rehearing to reconsider the effect of this letter.
This action was instituted on February 19, 1974. Respondent filed a number of exceptions which, by order of this court dated September 4, 1974, were referred to the merits. Respondent then answered and the court appointed Richard F. Knight as Commissioner to hear the evidence and report his findings of fact and conclusions of law. After hearing the evidence the Commissioner submitted his report on November 26, 1975, in which the Committee concurred, concluding that the offense of which respondent was convicted was serious enough to warrant disciplinary action.

EXCEPTIONS
The extended procedural history of this case is discussed in our original opinion and need not be reiterated here. Due to our disposition of this case in the original opinion we did not dispose of respondent's exceptions. Although similar exceptions were disposed of adversely to respondent in the first Ponder decision, Louisiana State Bar Association v. Ponder, 263 La. 743, 269 So.2d 228 (1972), since that proceeding was dismissed without prejudice by joint motion of the parties, we will discuss them anew.
I. Exceptions of No Right or Cause of Action
Respondent first alleges that there is no cause of action because Section 8 of Article XV of the Articles of Incorporation of the Louisiana State Bar Association as amended effective September 1, 1971, as applied against the respondent, is a bill of attainder and an ex post facto law in violation of the United States and Louisiana Constitutions. The basis for this argument is the fact that there was no time limit fixed before a disbarred lawyer could petition for reinstatement under the pre-1971 Articles of Incorporation whereas under the amended articles a lawyer whose misconduct resulted in disbarment is required to wait at least five years to apply for reinstatement.
Since this court has a number of options available in disciplinary proceedings, the fact that respondent could not apply for reinstatement in less than five years in the event of disbarment is presently irrelevant. If we should decide on a penalty of less than disbarment, there is no time limit in the present articles for applying for a modification of the decree. In addition, as the Commissioner noted, the respondent's argument "assumes that the result of the disciplinary action will be disbarment by the court and further assumes an application for reinstatement. At best, such a suggestion addresses itself to the penalty to be assessed should it be concluded that disciplinary action is warranted. It does not address itself to the basic issue of whether a disciplinary action predicated on a conviction states a cause of action."
Respondent next alleges that there is no right or cause of action because the petition fails to show that respondent was accorded due process of law. Respondent refers to certain provisions in paragraphs one through five of Section 8 of Article XV of the present Articles of Incorporation which provide that the Committee shall make a determination as to whether the crime of which the attorney has been convicted constitutes a serious crime, file a written report with this court setting forth its findings, etc. The cited provisions only apply when the Committee proceeds before the conviction becomes final and seeks an interim suspension. However, when the Committee does not petition this court until the conviction becomes final, as the instant case, the proceeding is controlled by paragraph seven of Section 8 of Article XV. The provisions in paragraph seven provide the respondent with a hearing before a Commissioner as a condition precedent to this court taking disciplinary action. Thus, this procedure, which was followed in this case, provides due process.
Respondent further contends that there is no cause or right of action because *143 the respondent has received a pardon from the Governor of the State of Louisiana and that the crime for which he was convicted is not a crime under the laws of the State of Louisiana. The effect of a pardon, under the pre-1971 articles, was not to prevent disbarment, but was to permit the disbarred lawyer to apply to this court for a modification or vacation of the order of disbarment. Thus, the existence of the pardon addresses itself to a subsequent request for a modification of the penalty and not to the issue of the existence of a cause of action. In addition, the crime of which respondent was convicted is a felony. 26 U.S.C. § 7206. The Articles of Incorporation clearly provide that a federal felony can form the basis of a disbarment suit. Article XV, § 8, Articles of Incorporation of 1971; Article XIII, § 12, Articles of Incorporation of 1941. Respondent's last argument in support of his exceptions of no cause or right of action deals with the effect of the letter agreement referred to above and will be disposed of in our discussion of the merits, infra.
II. Exception of Prematurity
Respondent alleges that the Committee on Professional Responsibility must make a determination that the crime constitutes a serious crime and must file a written report with this court and until it does so, proceedings in this court are premature. Again, respondent relies upon the first five paragraphs of Section 8 of Article XV which provide the procedure for instituting a proceeding to have an attorney suspended pending the finality of the conviction. The instant proceeding is based on paragraph seven of Section 8 of Article XV and is, therefore, not premature.
It is also argued that this action is premature because the Committee failed to afford respondent an investigative hearing in accordance with Louisiana State Bar Association v. Ehmig, 277 So.2d 137 (La.1973). In Ehmig we clearly held that "before the Committee on Professional Responsibility can petition the Court for suspension of an attorney whose conviction is not final under Section 8 of Article XV, Articles of the Louisiana State Bar Association, it must hold a contradictory hearing and determine that the conviction involves a `serious crime.'" (Emphasis added). 277 So.2d at 141. Thus, this exception is without merit.
III. Other Exceptions
Respondent's exception of vagueness is based on the contention that the petition is too vague and indefinite as to the Committee's determination that the crime involved is a serious crime reflecting upon respondent's moral fitness to practice law. Since this determination is not required under paragraph seven of Section 8 of the articles, the exception lacks merit. In addition, the petition clearly states what crime the respondent was convicted of committing. Respondent's exception of res judicata is not clearly drafted. Assuming that respondent is arguing that the previous dismissal of the first Ponder case operates to bar the present proceeding, the exception is without merit. The previous action was dismissed without prejudice to either party and in no way bars the present suit.
Respondent also avers that these proceedings are barred by prescription. It is argued that this is a quasi-criminal proceeding and the prescriptive periods provided in C.Cr.P. 578(2) and (3) are applicable. Alternatively, respondent argues that the ten year prescriptive period provided by C.C. 3544 applies. Assuming that there is some prescriptive period applicable to disciplinary proceedings founded upon a conviction of a crime, it would not begin to run until the conviction had become final since, until that point, the Committee could not proceed under paragraph seven of Section 8. Since the initial proceeding was instituted within two months of the finality of the conviction, the time periods referred to by respondent did not run. Respondent's argument that the Committee is judicially estopped due to certain language in another suit is so unclear and without merit as not to require written disposition.

MERITS
As mentioned in our original opinion, before the institution of the instant proceeding the Committee filed a petition for disciplinary action against respondent on April 12, 1972. This prior proceeding was based *144 upon the same February 5, 1970 conviction as the instant case and was brought under Section 8, paragraph 7(a)-(d) of Article XV of the 1971 Articles of Incorporation. This court disposed of certain exceptions filed in that suit on November 6, 1972. Louisiana State Bar Association v. Ponder, supra. Ponder then filed a petition for a writ of certiorari in the United States Supreme Court to review the November 6 judgment. On March 20, 1973 a letter was written by the Committee to Ponder setting forth the Committee's understanding as to the filing of a joint motion to dismiss the disciplinary proceeding instituted on April 12, 1972. The letter stated that the Committee would "reconsider the entire matter under Article XIII of the Articles of Incorporation of the Louisiana State Bar Association which was the controlling procedure prior to the adoption of Article XV of the Articles of Incorporation which became effective September 1, 1971." In addition, the Committee agreed to afford Ponder an informal hearing before the Committee prior to the institution of any new proceeding.
In consideration of the foregoing, Ponder agreed to dismiss the application then pending before the United States Supreme Court and to forego any action against the Bar Association in any court. Ponder agreed to the terms of the letter and, on joint motion of both parties, this court dismissed the proceedings without prejudice.
Respondent contends that due to this agreement the petition instituting the instant action discloses no right or cause of action because the Committee agreed to proceed under Article XIII of the pre-1971 articles. We construe this letter to be an agreement on the part of the Committee to proceed consistently with the 1941 procedures. Thus, to the extent the present procedures are not inconsistent with the previous articles, by following the existing procedures the Committee has complied with its agreement. In addition, at the Commissioner's hearing respondent objected to proceeding under the 1971 Articles of Incorporation because he alleged that the 1971 amendments changed the substantive law which previously obtained. These contentions can be disposed of together since they essentially present the same issue of what procedures did the 1941 articles provide that are not provided in the 1971 articles.
Under the Articles of Incorporation as they formerly existed and as they presently exist, respondent has no right to a hearing by the Committee prior to the institution of disciplinary proceedings in this court. Respondent's hearing is held before a Commissioner appointed by this court after the Committee institutes the disciplinary proceeding by petitioning this court for disciplinary action. Article XIII, §§ 7, 12, Articles of Incorporation of 1941; Article XV, § 8(7), Articles of Incorporation of 1971. In addition, since respondent was afforded an informal hearing prior to the institution of the instant proceeding, he has no cause to complain that this advantage was not afforded him.
There remains to be discussed the three primary differences between the 1941 and 1971 Articles of Incorporation: (1) Article XV of 1971 does not refer to the effect of a pardon; (2) Article XV of 1971 does not permit a disbarred lawyer to apply for reinstatement for five years; (3) the jurisprudence construed the 1941 articles to the effect that a conviction is only prima facie evidence of misconduct whereas the 1971 articles provide that such conviction is conclusive evidence of same.
As discussed above, the 1941 articles only provided that the effect of a pardon was to give the court discretion, upon the disbarred attorney's application, to "vacate or modify such order of disbarment." Article XIII, § 12, Articles of Incorporation of 1941. Thus, it was not an absolute defense to disbarment. In addition, nothing in the present articles precludes this court from considering the fact of the pardon if and when respondent made an application for reinstatement. Thus, whether the effect of the letter was to allow the respondent, if disbarred, to apply for a modification of the decree and whether this difference in the 1941 and 1971 articles is a "substantive" change is presently irrelevant. In like manner, the question of *145 whether the true construction of the letter is that respondent may, if disbarred, apply for reinstatement in less than five years and whether this five year period was a "substantive" change is not presently before this court. These questions can be resolved at the proper time and do not affect the Committee's decision in this case to proceed under the existing Articles of Incorporation.
The third difference alluded to above deals with the nature of the evidence the attorney could present in his defense to a disciplinary action. The 1921 Constitution granted the Supreme Court exclusive original jurisdiction of disbarment cases "involving misconduct of members of the bar. . ." La.Const.1921, Art. 7, § 10.[1] Pursuant to this grant of jurisdiction, this court in 1941 adopted rules governing disciplinary proceedings. Article XIII, § 12 provided the procedure in cases where the misconduct of the attorney resulted in a conviction.[2] In Louisiana State Bar Association v. Connolly, 201 La. 342, 9 So.2d 582 (1942), the court was presented with the issue of the constitutionality of § 12. The court properly held that this section did not exceed the court's authority under the 1921 Constitution by establishing a separate ground of disbarment not based on misconduct of the attorney because it was merely the misconduct as evidenced by the conviction that created the constitutional cause of action on which this court could act. The court felt constrained, however, to further hold that the conviction was only prima facie evidence of misconduct and, thus, the burden of proof was put upon the attorney to prove that such misconduct as necessitates disciplinary action did not in fact occur. See also Louisiana State Bar Association v. Cox, 250 La. 755, 199 So.2d 534 (1967); Louisiana State Bar Association v. Cawthorn, 223 La. 884, 67 So.2d 165 (1953); Louisiana State Bar Association v. Connolly, 206 La. 883, 20 So.2d 168 (1944).
The 1971 amendment provides that the certificate of conviction is conclusive evidence of the attorney's guilt of the crime for which he was convicted. Articles of Incorporation of 1971, Article XV, § 8(7)(c). Consistently, therefore, the attorney may only produce evidence not inconsistent with the essential elements of the crime for which he has been convicted and which is relevant to the determination of whether the conduct warrants discipline and the extent thereof. Articles of Incorporation of 1971, Article XV, § 8(7)(d).
The Connolly case construed the former rule to be one of evidence affecting the burden of proof. See Louisiana State Bar Association v. Connolly, 206 La. 883, 20 So.2d 168 (1944). Likewise, the present rule (providing that the conviction is conclusive) is in the nature of an evidentiary rule. Thus, the 1971 amendment did not effect a substantive change since the substance of both rules related to the disciplining of an attorney for misconduct which was the subject of a criminal prosecution; the only change was in the weight to be given the certificate as evidence of such misconduct.
The above analysis, however, does not dispose of the effect of the letter agreement confected between the parties. The Committee did not repudiate this agreement. It accorded every advantage to respondent *146 and none of the evidence which respondent offered in defense was rejected by the Commissioner. The Committee was properly of the opinion, however, that under the existing procedure the evidence offered by respondent was inadmissible as much of it was inconsistent with the essential elements of the crime for which respondent was convicted. However, due to the letter agreement we will review the evidence in light of the former jurisprudence. For convenience we adopt the Commissioner's summary of the evidence which we find to be correct:
"This evidence was elicited mainly through the testimony of the respondent and the testimony of J. Lynn Ponder, respondent's son and law partner, as well as his co-counsel in his criminal trial. This evidence centers around respondent's contention that the Internal Revenue Service did not allow him certain expenses he testified he incurred in order to produce his income during the two questioned years. Much of the dispute was over the amount of legal fees the respondent received from handling certain plaintiffs' cases on a contingency basis. The respondent contends that he paid certain expenses involved in these cases such as expenses for medical reports, appearance of doctors as witnesses, expenses paid to investigators, etc., in cash. Respondent testified that it was the custom in Tangipahoa Parish to pay for such expenses in cash and that he would show these expenses on the file cover of his file for each case. He stated that the Internal Revenue Service and the witnesses who testified against him in trial simply would take the amount of settlement or recovery awarded in a plaintiff's case and if he was to receive it on a 1/3rd contingency basis they would take 1/3rd of the full amount without allowing any deductions for expenses unless he had checks to prove the expenses. The evidence also shows that there was a dispute in this case over whether or not certain funds he received from a corporation in which he held stock was dividend income or was paid to him as a director fee since he was on the Board of Directors of the corporation.
"Affidavits of Mrs. Mathilda Ricks and Mrs. Homer Smith show that they were employees in Mr. Ponder's law office in the years in question. Mrs. Ricks' affidavit states that she assisted Mrs. Smith in the preparation of the income tax returns and that they were instructed by Mr. Ponder to include everything and in the event of a doubt as to any item to include it and that the schedule of fees were taken from the files and were computed on a net basis after deducting expenses, costs, advances and other expenses incurred in the prosecution of the claims or cases. Mrs. Smith's affidavit also states that she completed the fee schedule returns from the files on a cash basis of a total fee less advances, costs and incidental expenses in the presentation and completion of the cases. She also states that the returns for the tax years 1960 and 1961 were true and correct to the best of her ability, knowledge and information and that she filled out the returns for Mr. Ponder and his wife and neither told her what to include or what to exclude except that Mr. Ponder advised her to include everything and thereafter to add 5% of gross fees, rounded off, to cover any error in computation. In fact, the testimony of the respondent shows that Mrs. Homer Smith signed his signature to the returns.
"The respondent introduced the depositions of Walter A. Walsh and Nicholas Cefalu both of which depositions were taken in preparation for his criminal trial. Mr. Walsh's deposition shows that during 1960 and 1961 he was a private investigator and from time to time did investigative work for Mr. Ponder and was paid in cash for this work. Mr. Cefalu's deposition dealt with the dealings of the Long Beach Motor Hotel Corporation and whether or not certain money Mr. Ponder received was director's fees or dividends.
"The respondent testified that he had practiced law since March 3, 1931 and in all of that time he had never been reprimanded by the Bar Association. There had been several letters directed against him but all of these letters were settled prior to any hearings or anything else except for one in *147 which a hearing was held. After that hearing, the charges were dismissed against him. Mr. Earl Cefalu testified that he was Mayor of the City of Amite and that he had known respondent all his life. He testified that among other things, the respondent was a member of a Baptist Church and the Rotary Club in Amite and that he was familiar with Mr. Ponder's reputation with other people in the Amite community and that this reputation was good. He further testified that Mr. Ponder had handled his legal work and the legal work for all the members of his family and they were satisfied with his representation.
"Respondent also introduced into evidence the pardon given him on February 5, 1970 by the Honorable John J. McKeithen, Governor of the State of Louisiana. He also introduced a certificate of eligibility signed by the judges of the 21st Judicial District stating that he is and has been an attorney in good standing before the courts of said District since admission and is generally regarded by the judges and the public as an attorney of good repute and standing. Respondent also introduced an amicus curiae brief which was filed by certain attorneys in Tangipahoa and surrounding Parishes which was submitted to this Honorable Court in that matter involving the same parties and numbered 52,373. This brief, among other things, contained a prayer paragraph which stated that the movers were attorneys who have been in the best position to know the respondent and have admired and respected him and his learned and scholarly advocacy and stated that he was an attorney who was a highly respected and capable member of the Bar for many years. This brief was signed by twelve attorneys from the area in which the respondent practices law.
"Evidence was also introduced by means of a stipulation that if the Honorable Grover L. Covington, who presently serves as a Judge on the First Circuit Court of Appeal and formerly served as a judge of the 21st Judicial District Bench were called to testify, that he would testify that in 1960 and 1961 he was practicing law and he was associated with the respondent in a number of cases for which he received an appropriate division of the fee and the total of these fees received by him for these associations for both of these years exceeded the amount which the Government's witnesses credited the respondent. He would have also testified that from time to time the respondent retained investigator services and paid in cash for such services and charged said services to various of the files then being worked on in the office. He would also testify that he was familiar with the system of logging expenses on the files and that he sometimes made entries himself for cash outlays and in other instances reported the same to the respondent or to his secretary, who would make appropriate entries on the files for a cash outlay. He would have also testified that he was familiar with the routine followed in the State and Federal Courts in the area with reference to the reimbursement of witnesses for the lost wages and out of pocket expenses and the payment of expert witnesses for their fees and that the same was often done in cash on the date of trial at the courtroom. In addition, he would have testified as to the reputation of the respondent in the community, both professional and lay community and that his reputation is good. It was also stipulated that if Judge Warren Cornish were to appear and testify he would testify as a character witness for the respondent and his testimony would be favorable and that among other things it would state that the reputation of the respondent in the lay and professional community is good."[3]
Under the former jurisprudence the conviction was strong proof of the misconduct. Thus, the burden to refute this proof was a heavy one. We feel that the prima facie case established by the certificate of conviction has not been rebutted by respondent's evidence. On page 158 of the transcript of the Commissioner's hearing respondent testified that the defense presented to the jury consisted of this evidence that the cash *148 expenditures were not credited by the government. On page 160 respondent admits that the jury just "didn't buy it. . ." Respondent has not produced sufficient proof to show why the jury's verdict is in error.
Since we find that the record reveals that respondent wilfully made or subscribed an income tax return which he did not believe to be true as to certain material matters, all that remains is to determine whether the crime warrants discipline, and, if so, the extent thereof. To wilfully commit this crime certainly evidences moral turpitude, and, thus, respondent's conduct warrants disciplinary action. The mitigating evidence reveals that respondent has been a member of the bar for many years. It shows that he is well regarded by some fellow members of the bar and by members of the bench in the area in which he practices law. It further shows that he has a good reputation both among fellow professionals and among members of the lay community.
It is appropriate to note that a disciplinary action is not so much for the punishment of the attorney as it is for the preservation of the integrity of the courts and the salutary effect it has upon other members of the bar. Respondent's conduct reveals a disregard for the law and reflects upon his honesty in dealing with other people. Keeping in mind the respondent's reputation and the fact that tax evasion, 26 U.S.C. § 7201, is a more serious crime than the one for which respondent was convicted, we feel that the harshest penalty is not appropriate in this case.
Accordingly, for the reasons assigned, it is ordered that Leslie B. Ponder, Jr. be suspended from the practice of law for a period of six months, at the cost of respondent.
SUMMERS, J., dissents and adheres to the original opinion.
DENNIS, J., concurs.
SUMMERS, Justice (dissenting).
In further support of the original opinion in this matter and as part of my dissent to the Court's opinion on rehearing, I file herewith a verbatim copy of the letter of the Committee referred to in the original opinion.

*149 
*150 DENNIS, Justice (concurring).
I respectfully disagree with the majority's statement that the evidence offered by respondent in mitigation of his guilt was inadmissible. However, since the evidence was introduced and considered by this Court in determining whether the attorney's crime warranted discipline and the extent thereof, as I believe the Court and the Commissioner are required to do under the Louisiana State Bar Association Articles of Incorporation, as well as the federal and state constitutions, I concur in the majority decision. See, Louisiana State Bar Association v. Shaheen, 338 So.2d 1347 (La.1976) (Dennis, J., dissenting).
NOTES
[1] Articles of Incorporation, La.St. Bar Assn., Art. XV, § 8, para. (7)(a) through (d) (1971) provide:

"The following rules shall be applicable when a respondent has been convicted of a crime, to-wit:
. . . . .
"(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
"(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
"(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
"(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
"(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime." La. R.S. 37:218 Chapter 4-Appendix, p. 47.
[2] Article XIII, Sec. 12, Articles of Incorporation, La.St. Bar Assn. (1941) provides:

"Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana. Upon the person so convicted being pardoned by the President of the United States or Governor of this State, the Court, upon application may vacate or modify such order of disbarment."
[1] "The Committee will, through its Counsel, join with Leslie B. Ponder, Jr., through his counsel, in filing the attached `Joint Motion and Order to Dismiss Without Prejudice.' Thereafter, the Committee shall reconsider the entire matter under Article XIII of the Articles of Incorporation of the Louisiana State Bar Association which was the controlling procedure prior to the adoption of Article XV of the Articles of Incorporation which became effective September 1, 1971. In addition to the procedures outlined in said Article XIII, the Committee shall, prior to filing any pleadings with the Supreme Court, afford Leslie B. Ponder, Jr. an informal hearing before the Committee." (Emphasis added).
[1] ". . . The Supreme Court has control of, and general supervisory jurisdiction over all inferior courts.

"It has exclusive original jurisdiction of disbarment cases involving misconduct of members of the bar, with the power to suspend or disbar under such rules as the court may adopt; of suits for the removal from office of judges of courts of record as elsewhere provided in this Constitution; . . ." (Emphasis added).
[2] "Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana. Upon the person so convicted being pardoned by the President of the United States or Governor of this State, the Court, upon application may vacate or modify such order of disbarment."
[3] Respondent's remaining evidence to the effect that three other attorneys were convicted of the same crime but were not disciplined is not relevant to the issues in this case.