**COOPER SPORTSWEAR MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**HARTFORD CASUALTY INSURANCE COMPANY, Defendant.**

**HARTFORD CASUALTY INSURANCE COMPANY, Third–Party Plaintiff,**

v.

**James PAGNOTTA, Third–Party Defendant.**

**Civ. A. No. 91–1895 (WGB).**

United States District Court, D. New Jersey.

Feb. 23, 1993.

Glenn A. Jacobson, Fort Lee, NJ, for plaintiff.

Bigham, Engler, Jones & Houston by Thomas R. Pattison, Newark, NJ, for defendant and third-party plaintiff.

Walder, Sondak, Berkeley & Brogan, P.A. by Barry A. Kozyra, Roseland, NJ, for third-party defendant.

## OPINION

BASSLER, District Judge:

The defendant, Hartford Casualty Insurance Company, ["Hartford"] moves for summary judgment under Fed.R.Civ.P. 56. The Court grants the motion because the insured's undisclosed knowledge of the offending employee's dishonesty, prior to Hartford's issuance of its policy insuring against employee dishonesty, entitles it to disclaim coverage.

## I. BACKGROUND

Hartford issued a comprehensive dishonesty, disappearance and destruction insurance policy to the plaintiff, Cooper Sportswear Manufacturing Company, Inc., ["Cooper"] on March 25, 1988, in response to Cooper's application in February 1988. By letter dated July 5, 1988, Cooper notified its insurance broker, Kalvin–Miller International, Inc., ["Kalvin–Miller"] that it had discovered that one of its employees "committed dishonest acts against our company." Hartford on July 25, 1988 received a claim report under the policy from Kalvin–Miller.

Cooper's claim ultimately involved James Pagnotta, an employee of 40 years who served as the manager of the company's warehouse at 720 Frelinghuysen Avenue in Newark, N.J. The company, which manufactures and imports leather coats, jackets and other sportswear, maintains its executive offices, warehouse, manufacturing facilities and outlet store at that address. Pagnotta allegedly stole from the company cash and merchandise worth more than the $500,000 policy limit. Affidavit of Laurence P. Jortner, Esq., Exhibits G, J.

Hartford denied the claim in November 1990 for various reasons, including its determination that Pagnotta's dishonest acts were excluded from the policy, under Sections 7 and 15, because Cooper had prior information about Pagnotta's dishonesty. Hartford's Support Memorandum at 11. Cooper filed suit on April 11, 1991 in the Superior Court of New Jersey, Law Division, Essex County, alleging that it sustained a loss in excess of $500,000. On May 8, 1991, Hartford removed the action to this Court, 28 U.S.C. § 1441, under diversity jurisdiction. 28 U.S.C. § 1332. Hartford filed a third-party complaint against Pagnotta on May 22, 1991. Cooper alleges in its complaint that the policy covers its loss up to the $500,000 limit. Hartford in its third-party complaint seeks a judgment against Pagnotta, should Hartford be found liable for Cooper's loss.

## II. DISCUSSION

### A. The Summary Judgment Standard

Rule 56(c) provides that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. The Summary Judgment Analysis

■ In moving for summary judgment, Hartford argues, inter alia, that Sections 7 and 15 of the policy bar the claim because Cooper discovered Pagnotta's dishonesty before the inception of the policy. This argument merits summary judgment in favor of Hartford.

Section 7 of the policy provides:

The coverage of Insuring Agreement I shall not apply to any Employee from and after the time that the Insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the Insured or otherwise,

whether such act be committed before or after the date of employment by the Insured.

*Jortner Affidavit, Exhibit A.* Section 15 provides, in relevant part:

Insuring Agreement I shall be deemed canceled as to any Employee: (a) immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee....

*Id.*

No New Jersey case appears directly on point. As the courts of the state have not authoritatively addressed the critical issue, the Court must make a "prediction of how the state's highest court would decide were it confronted by the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). The Third Circuit in *McKenna* explained:

In sum, a federal court attempting to forecast state law must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.

*Id.* at 663.

Courts in other jurisdictions have considered cases where very similar policy language applied. These courts have consistently held that the type of clause stated in Section 7, which excludes fidelity coverage for an employee if the insured had learned of a dishonest act by that employee prior to the inception of the policy, is legally enforceable. *See, e.g., C. Douglas Wilson & Co. v. Insurance Co. of North America*, 590 F.2d 1275, 1278–79 (4th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 59, 62 L.Ed.2d 39 (1979); *Ritchie Grocer Co. v. Aetna Casualty & Surety Co.*, 426 F.2d 499, 500 (8th Cir.1970); *St. Joe Paper Co. v. Hartford Accident & Indemnity Co.*, 376 F.2d 33, 35 (5th Cir.), *cert. denied*, 389 U.S. 828, 88 S.Ct. 91, 19 L.Ed.2d 86 (1967); *Verneco, Inc. v. Fidelity & Casualty Company of New York*, 253 La. 721, 219 So.2d 508, 510 (1969). The Court concludes

**724**

that the New Jersey Supreme Court would follow this uniform line of cases.

■ Hartford has produced evidence showing that Sidney Cooper, the company's secretary-treasurer, had substantial information prior to the inception of the policy on March 25, 1988 that Pagnotta, Cooper's plant manager, had committed fraudulent and dishonest acts. In particular, it has submitted an internal memorandum of Norman Jaspan Associates, Inc., a private investigation firm retained by Cooper. The memo, dated March 16, 1988, describes a meeting the previous day between Sidney Cooper and several Jaspan representatives. First Affidavit of Thomas R. Pattison, Esq., Exhibit B.

This memorandum shows that Cooper Sportswear, particularly Sidney Cooper, had sufficient information about Pagnotta's dishonest conduct to trigger the exclusionary provisions of Sections 7 and 15. It was prepared by Jaspan employee William J. Luby, who met March 15, 1988 with Sidney Cooper and Norman Jaspan, president of the firm, to discuss "information which had surfaced implicating James Pagnotta." *Id.* at 1.

■ As a threshold matter, the Court concludes that there are no hearsay or multiple hearsay problems with the Jaspan memo. The Court notes that, in the final Pre–Trial Order of October 20, 1992, entered by United States Magistrate Judge Stanley R. Chesler, Cooper objects to the admissibility of the memo as hearsay and double hearsay. Pre–Trial Order at 27, 38. The parties, however, have stipulated that any documents produced by Jaspan Associates at its April 16, 1992 deposition, including the March 16, 1988 memo, are considered prepared and maintained by Jaspan "in the ordinary course of that company's business." *Id.,* Exhibit E. The author of the memo, Luby, had knowledge of what transpired at the meeting, having attended it, and was keeping a routine record of it. The memo, therefore, qualifies under the hearsay exception for "records of regularly conducted activity." Fed.R.Evid. 803(6).

■ Furthermore, any statements by Cooper employees quoted in the memo, tending to show knowledge of Pagnotta's dishonesty,

qualify as "admissions by party-opponent," considered non-hearsay under Fed.R.Evid. 801(d)(2). As the relevant portions of the memo only quote statements by Cooper employees, these "admissions" cure any potential multiple hearsay problems within the memo.

According to the memo, Sidney Cooper told Jaspan representatives of several instances where Pagnotta's honesty was called into question by Cooper employees. First, Mary Perez of customer relations told Cooper that "she knew that Pagnotta was stealing. She claimed that she did not know how, but was sure about her information." First Pattison Affidavit, Exhibit B, at 1. Second, Cooper said he approached Jimmy Nash, a longtime employee, and asked "about rumors that Pagnotta was stealing from the company. Nash turned white and said, 'Please, don't ask me about it.' " Nash also reportedly told Cooper that a supervisor, Arthur White, after being told by Cooper to "keep an eye on the back of the building," told Nash "the company should be looking at the front of the building instead." *Id.* As Cooper and Nash were discussing Pagnotta, the warehouse manager, at the time, this statement could be reasonably construed to be a reference to him.

Third, Cooper told the Jaspan representatives that he believed Pagnotta, four days earlier, had sold two leather jackets and a skirt to a saleswoman from the Ideal Zipper Co. for $400, but at first misled Cooper by saying he sold them for the full price of $500, before revising his story. Cooper said he suspected that Pagnotta had "pocketed the difference" of $100. *Id.*

According to the memo, Cooper asked the Jaspan representatives for two undercover "placements" within the factory: a woman to work in the warehouse and retail store and a male warehouseman. *Id.* at 2. From the context of the memo, it is clear that Cooper intended that these two undercover Jaspan employees keep an eye on Pagnotta.

In summary, the memo shows that, while Cooper's application was pending, and before the inception of the Hartford policy on March 25, 1988, Sidney Cooper had substan-

tial information, if not knowledge, about Pagnotta's commission of dishonest acts. The fact that Cooper asked Jaspan Associates to send two undercover operatives to watch Pagnotta at the warehouse indicates that Cooper, far from discounting this information, was taking it very seriously. *Compare Harris W. Hall Company, Inc. v. Security Ins. Co.*, 289 So.2d 832, 834 (La.Ct.App.1974) (supervisor discounted evidence of dishonesty out of trust for the suspected employee). The memo further demonstrates that Cooper's information about Pagnotta's dishonesty concerned a series of acts, not an isolated incident. *Compare Salley Grocer Co. v. Hartford Accident & Indemnity Co.*, 223 So.2d 5, 8 (La.Ct.App.), *writ refused*, 254 La. 134, 222 So.2d 883 (1969) (no information that employee had engaged in a consistent course of dishonest conduct).

Cooper does not dispute the authenticity of the Jaspan memo. Nor does it dispute that Sidney Cooper said what the memo indicates he said. The company, instead, characterizes the information as mere "unsubstantiated rumors." Opposition memorandum at 14. The Court, however, finds that the statements by Cooper in the memo, as a matter of law, show that he had sufficient "information," if not "knowledge," to trigger the exclusionary effects of Section 7 of the policy. As a legal matter, the policy never applied to Pagnotta when it took effect March 25, 1988.

Section 7 excludes coverage for any employee from the time the employer has "knowledge or information" that the employee has acted fraudulently or dishonestly. Here, the insured had such "knowledge or information" prior to the issuance of Hartford's policy. Hartford, therefore, is entitled to summary judgment and the dismissal of Cooper's complaint.

The policy provision in question should be enforced for the additional reason that it simply embodies the equitable concept that it is unfair to impose upon an insurer the risk of loss from an employee whom the employer knows or has ample reason to suspect is dishonest, but continues to employ.

## III. CONCLUSION

For the reasons discussed above, the Court grants Hartford's motion for summary judgment. An appropriate order follows.